E. M. LEWIS et al., Appellants, v. WOODBINE SAVINGS BANK
et al., Appellees.

**CONTRACTS:** Performance or Breach—Defects in Title.  In an ac-
1 tion for damages for alleged breach of a contract for sale of
real estate, the question as to whether defects of title to the
property were cured within a reasonable time, by an action
to cancel the tax sale, is a question of law, and not a matter
for the jury to determine.  Evidence reviewed, and *held* that
title to the property was perfected within a reasonable time.

**CONTRACTS:** Performance or Breach—Defects in Title.  The ac-
2 ceptance of the amount of money due under a contract for the
exchange of property, after plaintiffs determined that they
would not accept the title offered by the defendants, was addi-
tional reason for giving defendants time to correct any defects
in their title, including reasonable time to get necessary liti-
gation through the Supreme Court, in case of appeal.

*Appeal from Harrison District Court.*—E. B. WOODRUFF,.
Judge.

SEPTEMBER 26, 1919.

ACTION at law to recover damages for the alleged
breach of a contract for the sale or exchange of real es-
tate.  Trial to a jury, and at the close of plaintiffs' testi-
mony, the trial court sustained the defendants' motion for

a directed verdict, and rendered judgment against plaintiffs for costs. The plaintiffs appeal.—*Affirmed.*

*George H. Mayne,* and *Roadifer & Roadifer,* for appellants.

*H. L. Robertson,* for appellees.

PRESTON, J.—As said, the action was brought at law. Defendants filed an answer and a cross-petition in equity, praying for a reformation of the contract sued on. A separate trial was had in equity on the equitable issues, and a decree was entered in favor of plaintiffs, which was affirmed on appeal. *Lewis v. Woodbine Sav. Bank,* 182 Iowa 190. That question is now out of the case, and the trial to a jury was on the law issues. As to these, it is alleged that plaintiffs and defendants entered into a written contract, by which plaintiffs were to transfer their farm, valued in the contract at $35,000, subject to an incumbrance of $14,000, which incumbrance was the balance due on the real estate when plaintiffs purchased the farm; that the contract provided that plaintiffs' property was to be conveyed to defendants in consideration of the conveyance by defendants to plaintiffs of a certain business property, valued at $15,000, and a mill property valued in the contract at $5,000, and pay plaintiffs, in addition thereto, the sum of $1,749 in cash, on March 1, 1915; that the mutual conveyance should be made on March 1, 1915; and that each party was to furnish an abstract to the property conveyed by them, showing a good and sufficient title to the real estate, possession of the respective properties to be given on March 1, 1915, each party being given the privilege to enter, for the purpose of making improvements. Plaintiffs allege full performance of their part by transferring the farm, and that defendants have accepted performance; that defendants have failed, refused, and neglected to comply with the contract, in that they have failed to furnish

plaintiffs an abstract showing title, as provided, and that the abstracts furnished show the title to be defective; and that the title tendered was not a good and sufficient title; that defendants cannot carry out and perform the contract in accordance with its terms; and that plaintiffs have been damaged in the sum of $19,250, for which they ask judg-ment. By amendment, plaintiffs alleged that the title to the property was then in litigation in a case entitled *Woodbine Sav. Bank v. Tyler*, 181 Iowa 1389, which case was then pending in the Supreme Court of Iowa; that the foreclosure proceedings under which defendants obtained title were defective, in that one Annis was not made a party defendant, and that his right of redemption was not cut off, and some other minor objections. Nineteen objections were urged to the title to the mill property. We shall not set these objections out in detail. Several of them are defects which were cured by curative acts; some by quit-claim deeds, and in other ways. Some of these, if, indeed, not all of them, were such as that the plaintiffs would not have the right to refuse to accept the defendants' deed; but however this may be, if any of said alleged defects were apparent clouds upon the title, the defendants pro-ceeded at once, and in good faith, to cure all of said defects as soon as they could. This was done within a reasonable time after said objections were made, and defendants brought an action to quiet title. That action was brought. and decree obtained, at the next term of court after March 12, 1915, which term commenced August 31, 1915. We shall see later that the real question in the case, as we view it, is whether the title to both properties was perfect-ed within a reasonable time.

We have digressed a little in stating the issues. It was further alleged, by a third amendment to the petition, that, prior to the execution of the contract, defendants rep-resented that their property was of the actual value set

out in the contract; and that there has been a breach of the contract, and that said defendants failed, neglected, and refused, and were totally unable to comply with said contract within a reasonable time after March 1, 1915; that plaintiffs waive any claim for specific performance, and claim damages for the breach of the contract.

The answer is of considerable length, covering 16 pages of the printed abstract. It admits the pendency of the action in the Supreme Court, and that objections as set out were made to the title to the mill property; admits that defendants accepted the real estate from plaintiffs as performance of the contract in question on plaintiffs' part; and alleges that, on March 6, 1915, defendants paid plaintiffs $1,749 in cash, as provided in the contract, and immediately began to do all they couuld to make the abstracts satisfactory to plaintiffs, and, on September 4, 1915, had all said objections corrected, except the objection based upon the action then pending in the Supreme Court; avers that the contract was an exchange contract, and that it was not the intention of the parties to fix the value of the property; avers that none of the objections to the abstract were sufficient to authorize plaintiffs to refuse to accept said titles, and that none were defects, except the objection based on the action pending in the Supreme Court; and avers that the defendants did, in good faith, proceed to perfect the titles, and had, by proceedings in court, corrected all defects except the appeal, and that they had done all they could to get an early decision of the Supreme Court. Another division of the answer sets out at length the issues in the case then pending on appeal, the decree of the district court, and the appeal to the Supreme Court, and further avers that defendants promised plaintiffs that they would protect the title against the claim made in said action in the Supreme Court, and would comply with the final judgment. Later, the defendants did tender a bond,

which was refused by plaintiffs.   By a further amendment
to answer, defendants set out the decision of the Supreme
Court in the case of *Lewis·v. Woodbine Sav. Bank,* 182
Iowa 190, and the decision of the Supreme Court in the
case of *Woodbine Sav. Bank v. Tyler,* 181 Iowa 1389, and
averred that, by reason of the decision of the Supreme
Court, to the effect that the lien or title of Tyler was not
a valid, subsisting lien or title, plaintiffs are barred and
estopped from claiming that title is defective on account of
said decision.

Defendants' motion for a directed verdict was on the
following grounds, which we shall state as briefly as may
be:

First. The uncontradicted evidence of plaintiffs, at this
time, fails to show any defect in the title to either the mill
property or the Beebe business property: that is, such a
defect that plaintiffs would have any right in law to re-
fuse to accept deed tendered to them about March 2, 1915.

Second. That the only defect in the title to either of
said properties was the defect in the title to the Beebe
property, caused by the tax sale, and that action was
brought by the Woodbine Savings Bank to cancel that tax
sale and certificate, which case was pending in the Supreme
Court on March 2, 1915.

Third. That the defendants in said tax case filed a
demurrer to plaintiffs' petition, which was sustained by the
district court, and decree entered in favor of the bank, Sep-
tember 4, 1914; and that, the facts being admitted by the
demurrer, there was no question of fact involved,—simply a
law question whether the taxes involved in that case were
a valid tax and lien upon the property; that the trial court
held, prior to March 1, 1915, that the tax sale was void;
and that, later, and in due course, such decision was af-
firmed by the Supreme Court, a procedendo filed, and costs
paid, which is an adjudication binding upon the district

court and all parties to the action; that said taxes were null and void, and that the sale thereunder was null and void, and that the tax did not create any lien or cloud upon the property which would authorize plaintiffs to refuse to accept the property on March 1, 1915.

Fourth. That in this case, the Supreme Court adjudicated that the defendants had a reasonable time after March 1, 1915, in which to perfect or cure any alleged defect in the title to either property; that defendants notified plaintiffs in writing, when plaintiffs objected to the title, that they would proceed at once to cure and perfect title, and offered to indemnify them against any question of possession, or any defect in the title to either of said properties; that plaintiffs refused to accept said properties, after knowing that defendants were so proceeding; and that most of the alleged defects were technical, and have since been cured by curative acts, and by the statute of limitations.

Fifth. The undisputed evidence shows that the original notice in this case is dated March 12, 1915, received by the sheriff on March 13, 1915, and served on defendants March 17, 1915, and that plaintiffs admit that, since March 12, 1915, it has been their intention not to accept from defendants the property defendants were to convey on March 1st; that the evidence shows that the contract was one for exchange, and not of sale.

Sixth. That plaintiffs commenced this action prematurely, and had no right to begin the action on March 12th, 13th, or 17th, and at the commencement of said action, did not give defendants a reasonable time to cure any alleged defects of title to either property; and that plaintiffs have no right to maintain or prosecute this action at this time.

Seventh. That, upon the whole record, and the uncontroverted evidence, a verdict for plaintiffs could not be sustained.

Eighth. The undisputed evidence shows that defend-

ants did proceed at once, after March 6, 1915, in good faith, to cure any objections made by plaintiffs, and that defendants have perfected and cured all of said defects and objections, except as to the appeal of the tax case, which was terminated in due course of the business of the Supreme Court.

Ninth. The undisputed evidence shows that plaintiffs accepted $1,749 on March 6, 1915, and accepted part of the benefits of the contract, and that plaintiffs have never returned, or offered to return, any part of said money.

This motion was sustained generally. The facts are not in dispute; and, as we view it, there could be no question for the jury, unless it should be as to whether defendants cured the defects within a reasonable time, and this would relate to the question as to whether the decision of the Supreme Court, in *Woodbine Sav. Bank v. Tyler*, 181 Iowa 1389, was rendered within a reasonable time. The trial court held that this was not a matter for the jury to determine, and in this we concur. There was no evidence introduced, bearing upon the question as to the cause of the delay, if any, in the determination of that case, or whether it was determined within a reasonable time. As already pointed out, a decree had already been entered by the district court, in which it was decided that there was no merit in that action; and this was before March 1, 1915, and was on undisputed facts. The facts are given in the *Tyler* case, supra. It may be that, if that suit had not been commenced, the title would have been in a more beclouded condition than with the suit begun and gone to decree, because the suit was based upon a statement of facts admitted by the demurrer. A purchaser would thereby know what the facts were. It became then a question of law, and was, therefore, a mere difference of opinion amongst the attorneys, whether that state of facts rendered the tax sale

1. CONTRACTS: performance or breach: defects in title.

valid or invalid. In the case of *Mathews v. Lightner*, 85 Minn. 333 (88 N. W. 992), cited in *Buchan v. German American Land Co.*, 180 Iowa 911, 918, it was said: "A title is not unmarketable where no question of fact is involved, and it is good as a matter of law." We are aware of the fact that attorneys examining abstracts often make what might be called a microscopical examination,—doubtless they feel compelled to, lest other attorneys might discover other defects; so that objections are frequently made which are without merit. As said, the really serious objection in this case is in regard to the tax case on appeal. In some cases, at least, a presumption obtains in favor of the decree of the district court, until it is reversed, and we are not so sure but that we should give some such force to the decree of the district court, in view of the final determination of the Supreme Court, that there was no merit in that case from the beginning, and that, as a matter of law, on undisputed facts, there was no defect in the title by reason of the tax sale. This we understand from appellants' argument to be really their principal contention. Appellants concede in argument that, under certain conditions, the courts have held that it might be a question of law as to what is a reasonable time. This case is peculiar in some of the circumstances. It is not disputed that defendants brought their action to cure many of the supposed defects, at the next term of court. This was all they could do, and this, coupled with the fact that plaintiffs had, very soon after March 1, 1915, shown a disposition not to take the property, and that defendants tendered a bond, and also with the promptness with which plaintiffs brought this suit, and the payment and acceptance of the $1,749, and perhaps some other circumstances, shows, we think, as a matter of law, that defendants did perfect the titles within a reasonable time. As in many other cases, what is a reasonable time depends upon the circumstances. The

opinion in the *Lewis* case, 182 Iowa 190, supra, says that time was not the essence of this contract, and that defendants were entitled to a reasonable time within which to meet the objections of the plaintiffs.   It is urged by appellants that such questions were not involved in that case, and they argue that, even though the contract itself does not make time the essence of the contract, the circumstances may be such as to show that such was the fact, without such recital.   Conceding, for the sake of argument, that such may be the rule in some cases, we think the record in this case does not warrant such a holding.   It is clear to us, under this record, that the defendants were entitled to a reasonable time in which to perfect the titles.   Indeed, in one of the amendments to plaintiffs' petition, they plead that defendants "were totally unable to comply with said contract within a reasonable time after March 1, 1915," thus, impliedly at least, conceding that defendants were entitled to a reasonable time; and the argument is that the titles were not perfected within such time.   We should have stated before that plaintiffs did not furnish defendants, on March 1, 1915, or thereafter, an abstract of title such as they had agreed to do; but the abstract which was furnished by plaintiffs showed incumbrances and defects in the title to plaintiffs' property.   We take it, however, that such title was, in some way, and at some time, made satisfactory to defendants, since defendants did take plaintiffs' property.   At any rate, it appears from the record that neither party was ready to transfer their property on the first day of March.

There is another alleged defect that should be noticed briefly, and that is in regard to the pendency of an action by one Annis against the defendant Woodbine Savings Bank.   The petition in that case was filed March 4, 1915, within a day or two after the abstract had been submitted to plaintiffs' counsel for examination.   The petition is brief,

and alleges that the bank claimed to be the owner of the property under a sheriff's deed, based on the foreclosure of a mortgage, at which time Annis alleged that he was the owner of a sheriff's certificate of sale of said property, and that the bank, in the foreclosure proceedings, failed to make him a party defendant to its foreclosure; and he asked to be allowed to redeem. Appellees contend that such action was brought for the sole purpose of clouding the title to the property, and to give the plaintiffs an excuse for not accepting it under their contract. It does have some such appearance; but the case was brought by attorneys other than those representing plaintiffs herein, and plaintiffs' contention as to that matter is not sustained by the proof; but it appears that, at the next term of court, and on September 4, 1915, before anything had been done of record by defendants, Annis voluntarily dismissed that action, at his cost. As before stated, the title was quieted and all defects cured at the next term of court. The Annis action was not brought until after March 1st, and therefore would not have shown on the abstract, had it been tendered on March 1st. The foreclosure suit was in 1913, and it appears that Annis was the assignee of the certificate of sale; but there was nothing of record to show that the assignor of Annis was the owner at the time the foreclosure suit was commenced by the bank. We shall not go further into the details as to this matter, or determine the controversy as to this alleged defect, because of the dismissal and the decree quieting title.

One or two other observations in conclusion. It seems that, after plaintiffs had determined they would not accept the title, they did accept the $1,749 in money; and

we think this is another reason why defend-

2. CONTRACTS: performance or breach: defects in title.

ants should be given time to correct any defects in their titles. Plaintiffs contend that they were justified in bringing this action

at once, and they claim that there was, in fact, a breach of the contract on March 2d, and they are claiming damages with interest from that date. This would give defendants no time at all to correct the defects in the abstract and in their titles. If the court had submitted the case to the jury, and told the jury that the defendants were not entitled to any time, that would be making the first of March the essence of the contract. As shown, plaintiffs were not prepared, on their part, to pass their title at that time. If defendants were entitled to any time, and were entitled to come into court at all, it seems to us they would have a reasonable time to get the case through the Supreme Court, in case of appeal. Without further discussion, it is our conclusion that defendants were entitled to a reasonable time in which to perfect their title. They did so within a reasonable time.—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.